UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ADRIAN LAMONT BENTON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5: 18-493-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KATHY LITTERAL, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Adrian Benton filed this action seeking to vacate his state court conviction under 28 U.S.C. § 2254. [Record No. 1] The matter was referred to a United States Magistrate Judge for review and issuance of a report pursuant to 28 U.S.C. § 636(b)(1)(B) consistent with local practice. Following briefing, United States Magistrate Judge Hanly A. Ingram recommended that that Benton's § 2254 petition be denied, that no certificate of appealability issue, and that a hearing is not necessary. [*See* Recommended Disposition; Record No. 15.]

Benton makes two objections to the Recommended Disposition. [Record No. 16] First, he alleges that the government used perjured testimony to convict him. [*Id.*] Second, Benton asserts that he is entitled to a hearing regarding his low intelligence. [*Id.*] The Court reviews *de novo* the portions of a magistrate judge's recommended disposition to which an objection is made. 28 U.S.C. § 636(b)(1)(C). The Court is not required to review claims in which neither party objects to the findings of the magistrate judge. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the undersigned has reviewed all of Benton's claims *de novo*, and agrees with all parts of the magistrate judge's analysis.

# I.

Benton unsuccessfully sought to obtain marijuana from Le'mon Allen on May 25, 2006. *Benton v. Com.* ("*Benton I*"), No. 2011-SC-411-MR, 2013 WL 1188006, at *1 (Ky. Mar. 21, 2013). Benton fired two shots near Allen after Allen explained he did not have the substance. *Id.* He then proceeded to chase Allen down the street while shooting at him. *Id.*

Benton was later involved in a separate altercation at 317 Wilson Way, where John Mattingly, Will Mattingly, Jeff Procter, and Katie Mattingly were present. *Id.* Benton and co-Defendant Richard Wright knocked and then forcibly entered the residence at gunpoint. *Id.* Benton proceeded to rob Will Mattingly and assault and rob Jeff Procter. *Id.* John Mattingly called the police at some point during the altercation. *Id.* Wright then shot John Mattingly during the call. *Id.* Benton also fired shots in the direction of the residence as he and Wright fled the scene. *Id.*

Benton and Wright were indicted on numerous charges and the death penalty was a sentencing option for both defendants. [Record No. 12-2, p. 1] Benton's felon-in-possession charge was severed, and he and Wright were tried together in Fayette Circuit Court on May 2, 2011. But during the trial, one of Benton's attorneys (George Sornberger) suffered a heart attack. Sornberger withdrew from the case, and Benton was represented for the remainder of the trial by Casey Holland (who was co-counsel with Sornberger) and Rodney Barnes. The trial court granted a one-week continuance following Sornberger's heart attack.

On the fourth day of trial, Wright entered a guilty plea to murdering John Mattingly. Benton's trial then proceeded with the death penalty being removed as a sentencing option. The jury found Benton guilty of numerous charges including robbery, complicity to commit manslaughter, assault, wanton engagement, and being a persistent felony offender. [Record

No. 12-2, p. 21] The jury recommended that Benton serve a total of twenty-seven years of imprisonment, but the trial court sentenced him to a forty-four year term instead. [Record No. 12-2, p. 24-31]

A one-day trial was held in September 2011 to resolve Benton's charge of being in possession of a firearm following a felony conviction. Testimony presented during this trial was substantially related to the events of May 25, 2006. *Benton v. Com.* (*Benton II*), No. 2011-CA-1983-MR, 2014 WL 1004531 (Ky. Ct. App. Mar. 14, 2014). The jury convicted Benton following the second trial and recommended a ten-year sentence. *Id*. The trial court imposed the ten-year sentence recommended by the jury but directed that eight of the ten years would run concurrently with the previously-imposed forty-four year term. *Id*.

Benton appealed his conviction and sentence from the first trial to the Supreme Court of Kentucky, raising the following issues:

> (1) Whether his Sixth and Fourteenth Amendment rights to a fair trial were violated when the trial court allowed a death qualified jury to determine his guilt?
>
> (2) Whether the trial court erred in modifying the number of his peremptory strikes provided during jury selection?
>
> (3) Whether the trial court erred in excluding evidence from an independent investigation that occupants of the Mattingly residence were selling marijuana and, relatedly, whether the trial court erred in excluding the testimony of three defense witnesses who were expected to testify that Benton knew drugs were being sold at the Mattingly residence?
>
> (4) Whether the trial court erred in preventing Benton's expert psychological witness from testifying concerning his precise IQ score.
>
> (5) Whether the trial court erred in modifying the jury's recommended sentence.

[Record No. 15, p. 3 (quoting *Benton I*, 2013 WL 1188006 at *1-7)] Notwithstanding these claims, Benton's conviction and sentence were affirmed unanimously on appeal.

Benton also appealed his conviction and sentence from the second trial to the Court of Appeals of Kentucky. *Benton II,* 2014 WL 1004531, *rev. den.* (March 25, 2015). That court, however, rejected his claims as unpreserved and his conviction was affirmed. The issues raised in the appeal from the second trial are not before the Court.

Benton also filed two *pro se* motions for relief under RCr 11.42, alleging ineffective assistance of counsel. [Record No. 12-4, pp. 1, 4] Benton appealed following the Fayette Circuit Court's denial of the motions. [Record No. 12-4, p. 35] Additionally, the Fayette Circuit Court denied Benton's motion to vacate his conviction under CR 60.02. [Record No. 12-4, p. 7] Benton appealed the denial of the motion to vacate, both in his *pro se* capacity and through appointed counsel. The Court of Appeals of Kentucky consolidated the appeals of his motions under RCr 11.42 and CR 60.02 and affirmed the trial court's decisions. [Record No. 12-4, p. 129]

Benton filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 with this Court on August 15, 2018. He claims that:

> (1) The trial court violated his Sixth and Fourteenth Amendment rights to a fair trial by forcing him to face a death qualified jury;
>
> (2) The trial court violated his due process right to present a defense by excluding:
> (A) evidence that this was not a 'random street crime'; and
> (B) evidence of his IQ scores;
>
> (3) The trial court abused its discretion by imposing a sentence more onerous than the 27-year sentence recommended by the jury;
>
> (4) The trial court erred by reducing the number of his peremptory strikes after voir [dire] was completed;

(5) He was denied due process of law guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution when his trial counsel failed to request a continuance.

(6) His trial counsel was ineffective for failing to impeach a witness in violation of his Sixth Amendment rights; and

(7) His trial counsel was ineffective for failing to challenge the Commonwealth's alleged destruction of evidence.

[Record No. 1] Magistrate Judge Ingram filed his Recommended Disposition on January 23, 2019. [Record No. 15] Benton then submitted objections related to the evidence of his IQ scores and concerning his trial counsel's failure to impeach a witness. [Record No. 16]

**II.**

A habeas petition shall not be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The standard is highly deferential "for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal quotation marks omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"A state court's decision is contrary to clearly established Federal law if it (1) arrives at a legal holding that contradicts a Supreme Court case or (2) involves facts that are materially indistinguishable from a Supreme Court case but nonetheless arrives at a substantially different result." *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Clearly established federal law does not include *dicta* from the

Supreme Court or holdings from federal courts of appeal. *See Parker v. Matthews*, 567 U.S. 37, 48 (2012); *Williams*, 529 U.S. at 412.

An unreasonable application of clearly established federal law occurs "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a [petitioner's] case." *Williams*, 529 U.S. at 409. The question is whether the state court decision was "objectively unreasonable" and not whether it is simply erroneous or incorrect. *Id.* at 409–11. A state court's decision constitutes an "unreasonable application" of Supreme Court precedent only if the issue presented is so one-sided that "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S. Ct. 786.

Further, factual findings made by the state court are presumed to be correct and can only be rebutted by "clear and convincing evidence." *Schiro v. Landrigan*, 550 U.S. 465, 473-74 (2007); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003), *cert. denied*, 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). The factual determinations of a state court are "based on an unreasonable determination of the facts" under § 2254(d)(2) only when they are "objectively unreasonable in light of the evidence presented in the state court-proceeding[.]"). *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### III.

Magistrate Judge Ingram reviewed all of Benton's requests for relief and found that the claims were either meritless or without basis. [Record No. 15] As a result, he recommended that this Court deny Benton's § 2254. The Court has reviewed the entire record and agrees with the magistrate judge's Recommended Disposition. The Court will first turn to the two

claims to which Benton objected to the magistrate judge's findings and recommendations. The undersigned will then consider the remainder of Benton's claims.

   **a. Benton's right to present a defense was not impeded by the limitations placed on testimony regarding his intelligence.**

Benton argues that his Due Process rights were violated when the Court excluded evidence of his IQ. [Record No. 1, p. 7] He contends that the trial court excluded evidence of his IQ and, because of mental retardation, he lacked the ability to form the mental state of wantonness. In his petition and objections, Benton requests a hearing to determine if he has a "disqualifying intellectual disability." He claims that his right to present a defense was impeded because he could not present evidence of his IQ.

The Supreme Court of Kentucky found that Benton was not denied the right to present to the jury his defense that he lacked the mental ability to form a wanton state of mind because his expert testified regarding the petitioner's IQ range in non-numerical terms. *Benton I*, 2013 WL 1188006 at *5. The expert also expressed his opinion regarding whether a person with a similar IQ range could form intent and understand the consequences of his actions. *Id.* However, the trial court sustained the Commonwealth's motion to exclude testimony referencing Benton's exact IQ score. *Id*.

In objecting to the magistrate judge's Recommended Disposition, Benton again requests an evidentiary hearing in an attempt to demonstrate that his IQ is 70 or below. He cites *Hall v. Florida*, 572 U.S. 701, 723-24 (2014), which concluded that Florida's rigid cut-off IQ score of 70 was invalid and that a defendant should be able to present evidence of an intellectual disability during the sentencing phase of a capital case. However, *Hall* is distinguishable from the present case. While *Hall* was a death penalty case, the death penalty

was removed as a sentencing option for Benton. Additionally, Benton was able to present evidence of his mental ability because his expert testified to his IQ range and gave an opinion regarding whether someone within this range could form the requisite intent needed to commit the crimes charged. Benton does not cite to any federal law that would provide the basis of his habeas claim. And he has not explained why the inclusion of the testimony is contrary to clearly-established federal law or how it involves an unreasonable application of the law to the facts.

> b. **Benton procedurally defaulted on his claim that his counsel was ineffective for failing to impeach one of the Commonwealth's witnesses.**

Benton asserts that his counsel was ineffective for failing to impeach a witness and that this alleged failure violated his Sixth Amendment rights. [Record No. 1, p. 14] He contends that his counsel did not impeach a witness who the prosecutor knew had committed perjury and lied about her occupation. [Record No. 1, p. 14] Benton claims that the witness (Katie Mattingly) testified that she was a law clerk but she was, in fact, an assistant commonwealth's attorney. [Record No. 1, p. 14] Benton also contends that Mattingly was selling drugs at the residence when it was robbed. [Record No. 1-1, p. 8]

The court of appeals found that Benton's arguments were not properly raised through a CR 60.02 motion. *Benton III*, 2017 WL 3129182, at *4. It noted that Benton should have presented these issues in an earlier proceeding. *Id.* The magistrate judge explained that these issues are procedurally defaulted and that Benton has failed to explain why he failed to raise the issue in the earlier proceeding. [Record No. 15, p. 18] Further, Magistrate Judge Ingram noted that Benton does not point to any cause or prejudice to excuse his procedural default. [*Id.*]

Benton objected to the magistrate judge's finding that the issue was not properly raised in the CR 60.02 motion. [Record No. 16] He continues to argue that the Commonwealth used the perjured testimony of Katie Mattingly and he attempts the frame the issue as one of prosecutorial misconduct. [*Id.*] However, Benton's petition and supporting memoranda clearly state that he "asserts that his counsel was ineffective because they failed to impeach a witness for the Commonwealth" and that trial counsel was ineffective for not moving for a special prosecutor. [Record No. 1-1, p. 8]

Benton has not shown any cause or prejudice regarding why he failed to properly bring this claim. As the court of appeals explained, he did not raise the issue before attempting to bring it through a CR 60.02 motion. Benton has not shown that there was some objective factor external to the defense that prevented him from complying with the state's procedural rule and asserting this claim under a proper procedural vehicle. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011) ("The "cause" standard requires the petitioner to show some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." (internal citations and quotations omitted)). As a result, Benton is not entitled to seek habeas relief on this issus.

### c. Benton's Sixth and Fourteenth Amendment rights were not violated when he was tried by a death-qualified jury.

Benton contends that the Fayette Circuit Court violated his Sixth and Fourteenth Amendment rights to a fair trial by continuing with a death-qualified jury even after imposition of the death penalty was no longer a possibility. [Record No. 1, p. 5] He moved for a new venire panel after the death penalty was removed as a sentencing option, but the trial court denied his motion.

The Supreme Court of Kentucky held that "the trial court did not violate Benton's constitutional rights to a fair trial by allowing the death qualified jury to proceed with determining his guilt and sentence." *Benton I*, 2013 WL 1188006 at *2. It explained that "the jury in Benton's trial was death qualified on the presumption that the death penalty was a possible option upon conviction. The removal of death from the sentencing options did not magically transform the jury into an imbalanced and partial one." *Id*.

In reaching its decision on this issue, the Supreme Court of Kentucky followed the holdings of the United States Supreme Court in *Buchanan v. Kentucky*, 483 U.S. 402 (1987) (explaining that a jury just needs to be able to conscientiously apply the law to the facts to be constitutionally permissible) and *Lockhart v. McCree*, 476 U.S. 162, 165 (1986) (holding that the defendant was not deprived of his right to an impartial jury because individuals who would not properly apply the rule of law could be excluded). It appropriately followed clearly-established federal law in resolving this issue.

> **d. Benton's Due Process rights were not violated because the trial court excluded evidence of prior drug trafficking at the residence.**

Benton also claims that his Due Process rights were violated because the trial court excluded evidence that the altercation was "not a random street crime." [Record No. 1, p. 7] He alleges that the court violated his right to present relevant evidence of his motive by excluding evidence that an occupant of the residence in issue had been the target of a prior drug trafficking investigation and that the victim had assisted in selling marijuana at the home.

As a starting point, the Court notes that all evidence must be relevant to be admitted. Ky. R. Evid. 402. However, relevant evidence can be excluded if its probative value is substantially outweighed by unfair prejudice. Ky. R. Evid. 403. Additionally, character

evidence is typically inadmissible to prove that on a particular occasion a person acted in accordance therewith. Ky. R. Evid. 404. Exceptions to Rule 404 are still subject to the balancing test under Rule 403.

The state supreme court explained that evidence related to the prior drug trafficking investigation was "neither relevant nor probative to the present case against Benton, even within the context of proving knowledge and motive." *Benton I*, 2013 WL 1188006 at *5. "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also Rockwell v. Yukins*, 341 F.3d 507 (6th Cir. 2003) (excluding evidence of the husband's alleged abuse was not an unreasonable application of clearly-established federal law when the evidence was excluded under the rules of evidence). In the present case, the exclusion of the subject evidence was not contrary to any clearly-established federal law or based on an unreasonable determination of the facts.

### e. The Supreme Court of Kentucky correctly concluded that Benton's claim regarding witnesses who would testify about drug dealing in the residence was not properly before the court.

Benton further claims that three witnesses would testify to knowledge of drug dealing in the residence. But the state supreme court noted that the issue was not presented to and addressed by the trial court. As a result, it was not an issue properly presented on appeal. *Benton I*, 2013 WL 11188006 at *5.

Before a federal court may grant relief based upon a claim presented in a federal habeas petition, the petitioner must have presented the claim to the state courts and exhausted all

remedies available in the state system, otherwise the petitioner risks procedural default. 28 U.S.C. § 2254(b)(1)(A). "A federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2002). Additionally, claims that are not "fairly presented" to the state court cannot form the basis for relief on habeas review. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

In deciding whether a claim is procedurally defaulted the Court must decide: (1) whether the petitioner failed to comply with an acceptable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate state ground on which the state can foreclose federal review," and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2012); *Maupin v. Smith*, 785 F.2d 135, 138-39 (6th Cir. 1986). A claim that is procedurally defaulted is barred from habeas review "unless the prisoner can demonstrate cause for the default and actual prejudice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

While procedural default may be waived if the respondent fails to assert it, the Court may raise the issue *sua sponte* because the state did not explicitly and deliberately waive the defense. *See Smith v. Moore*, 415 F. App'x 624, 628 (6th Cir. 2011); *Howard. v. Bouchard*, 405 F.3d 459, 376 (6th Cir. 2005). Magistrate Judge Ingram explained it was "appropriate for the Court to consider procedural default in this case because the state courts explicitly found that two of Benton's claims were not properly presented for their review." [Record No. 15] One of the claims that was not properly presented was the issue regarding the testimony of the three witnesses. Magistrate Judge Ingram stated that Benton needed to be on notice that he

had to explain why he had not raised these claims in accordance with the Kentucky rules and that he has the opportunity to argue against procedural default in his objections.

Benton did not properly raise the issue of the three witnesses prior to trial, so the Supreme Court of Kentucky declined to address the issue because it was not properly before it. Thus, he procedurally defaulted on the claim because he did not properly raise the issue in state court. *See Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015). Benton may overcome procedural default by showing "cause" and "prejudice" for his failure to properly assert this claim. *Sheppard v. Bagley*, 604 F. Supp. 2d 1003, 1013 (S.D. Ohio 2009) (finding that an R&R provides adequate notice to a defendant of a previously unnoted procedural default issue), *aff'd*, 657 F.3d 338 (6th Cir. 2011). However, he does not mention the issue of the three witnesses in his objections to the magistrate judge's Recommended Disposition. Thus, Benton has failed to show "cause" or "prejudice" to overcome procedural default on this issue.

  f. **The trial court did not violate clearly-established federal law or unreasonably apply the law to the facts by imposing Benton's sentence to run consecutively rather than concurrently.**

Benton argues that the court abused its discretion by imposing a more onerous sentence than the one recommended by the jury at the conclusion of his first trial. [Record No. 1, p. 8] As noted previously, the jury recommended that his first sentence run concurrently for a total of twenty-seven years. The trial court, however, increased his sentence to forty-four years by having portions of it run consecutively.

The Supreme Court of Kentucky explained that, while criminal juries are required to recommend whether multiple sentences should run concurrently or consecutively, trial courts have discretion in deciding how the sentences will be served. *Benton I*, 2013 WL 1188006 at *7 (citing *Dotson v. Commonwealth*, 740 S.W.2d 930, 932 (Ky. 1987)). The appellate court

concluded that "the trial court properly considered the pre-sentence investigation, the violent nature of the offense, and the jury's recommendation. Ordering Benton to serve some of his sentence consecutively was well within the trial court's discretion." *Id*. at *7.

As both the Warden and the Magistrate Judge noted, and as the Supreme Court explained in *Oregon v. Ice,* the majority of states continue to "entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently." 555 U.S. 160, 163 (2009). Based on the foregoing, the Supreme Court of Kentucky's decision on this issue was not contrary to clearly-established federal law or based on an unreasonable determination of the facts.

### g. The Supreme Court of Kentucky properly concluded that the trial court did not err by reducing the number of Benton's peremptory challenges.

Benton contends that the trial court erred by reducing his number of peremptory challenges. [Record No. 1, p. 10] He explained that he believed that he would have five additional peremptory strikes. As a result, he claims that he refrained from challenging jurors for cause based on an assumption he could use the additional peremptory challenges. [*Id*.] Benton originally was given fifteen peremptory challenges – "eight strikes pursuant to RCr 9.40, two additional strikes for two alternate jurors, and five 'gratuitous' strikes in consideration of the defendants being tried jointly and their eligibility for the death penalty." *Benton I*, 2013 WL 1188006 *3; [Record No. 12-2, p. 18]. But the trial court noted that the five 'gratuitous' peremptory strikes were not necessary after Benton's co-defendant pled guilty and the death penalty was removed as a sentencing option. *Id.*

Benton argues that he would have sought to strike more prospective jurors for cause if he had known that he would not have fifteen peremptory challenges. However, as Magistrate

Judge Ingram noted, Kentucky law provides an unlimited number of strikes for cause. Ky. Rev. Stat. § 29A.290(2)(a); Ky. R. Crim. P. 9.36. The Supreme Court of Kentucky found Benton's argument unconvincing. It further explained that Benton received more peremptory strikes than the number to which he was entitled under RCr 9.40 and that he failed to show any prejudice based on the number of strikes he received. *Benton I*, 2013 WL 1188006, at *4.

In denying this particular claim, the Court notes that there is no federal constitutional right to peremptory challenges. *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000); *Ross v. Okla.*, 487 U.S. 81, 89 (1988).

> Peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. As such, the "right" to peremptory challenges is "denied or impaired" only if the defendant does not receive that which state law provides.

*Ross,* 487 U.S. at 89 (citations omitted). Here, Benton received more than the required number of strikes under the state statute. And the state court decision did not run afoul of any clearly-defined federal law.

### h. Benton's counsel was not ineffective for not objecting to a week-long continuance after one of his attorneys was forced to withdraw from the case for medical reasons.

Benton contends that he was denied Due Process because his trial counsel failed to request a continuance after George Sornberger suffered a heart attack and subsequently withdrew from the case. [Record No. 1, p. 13] The court of appeals noted that Benton alleged that his new lead counsel, Casey Holland, did not object when the trial court granted a brief continuance or seek additional time to prepare for trial. *Benton III*, 2017 WL 3129182, at *3. But Benton claims that Holland was wholly unprepared. [Record No. 1]

A defendant's right to effective assistance of counsel is violated when defense counsel's performance falls below an objective standard of reasonableness and the defendant is prejudiced by counsel's performance. *Henness v. Bagley*, 766 F.3d 550, 554 (6th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The standard is highly deferential to counsel. *Id*.

When reviewing a state court's application of the Strickland standard, the court asks whether the state court's application was unreasonable, not whether defense counsel's performance fell below the requirements of *Strickland*. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Both the *Strickland* standard and the standard for reviewing the state court's application of *Strickland* are highly deferential, making the review "doubly deferential." *Id*. at 105. Thus, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*.

Benton's counsel requested a one-week continuance, not a three-day continuance and the continuance was granted. *Benton III*, 2017 WL 3129182, at *3. Further, Holland had worked on the case for over a year. *Id*. Benton refers to *United States v. McLendon*, 146 F. App'x 23 (6th Cir. 2005), in support of his ineffective assistance of counsel claim. But the trial court in *McClendon* did not grant a requested continuance. Here, the court of appeals concluded that "Benton failed to overcome the strong presumption that his counsels' decision was reasonable." *Id*. And it properly applied the *Strickland* standard. Thus, Benton is not entitled to relief on this claim.

### i. Benton's counsel was not ineffective for failing to object to the destruction of certain evidence.

Lastly, Benton argues that his trial attorneys were ineffective for failing to challenge the Commonwealth's destruction of evidence occurring before trial. [Record No. 1, p. 15] He explains that his attorneys were ineffective because they failed to challenge testimony and prevent the Commonwealth from using an expert witness to testify about the gun used and the shell casing found at the scene. [Record No. 1, p. 15]

The court of appeals explained that:

> As a preliminary matter, Benton's assertion that the Commonwealth destroyed the gun used in his case is simply incorrect. Although one firearm was recovered from Richard Wright's residence and introduced into evidence, the weapon used at both crime scenes was never recovered. The jury was made aware of this fact. Additionally, Detective David Richardson of the Lexington Police Department testified that shell casings and a projectile were inadvertently destroyed prior to trial. Again, the jury was aware that these items were destroyed and was able to afford their destruction due weight. In fact, the Supreme Court of Kentucky determined in Benton's direct appeal that sufficient evidence of his guilt existed in the record to deny his motion for a directed verdict even in the absence of the shell casings and projectile. *Benton,* 2011-SC-000411-MR, 2013 WL 1188006, at *6. Because the jury was aware of the destruction of the shell casings and projectile and sufficient evidence existed against Benton to convict him in their absence, he was not prejudiced by his counsels' failure to hire an expert to testify about these matters.

*Benton III*, 2017 WL 3129182 at *3-4. The court also found that there was no bad faith in the destruction of the evidence and concluded that Benton's counsel was not ineffective for failing to contest the issue because doing so would have been futile. *Id*.

As noted previously, when reviewing the state court's application of the *Strickland* standard "the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 101. Benton has not demonstrated here that the state court's application of *Strickland* was improper. The court of appeals

reasonably applied the *Strickland* standard and these findings were not based upon an unreasonable determination of the facts.

### III.

Benton requests the appointment of counsel in his objections to the magistrate judge's Recommended Disposition. [Record No. 16, p. 3] However, a habeas petitioner does not have a right to appointed counsel. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Instead, "[t]he decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interest of justice or due process so require." *Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 787 (E.D. Mich. 2004) (citing *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986)). The interests of justice and due process do not require the appointment of counsel here and Benton's request will be denied.

### IV.

A Certificate of Appealability will not issue because reasonable jurists would not debate whether the Court was correct in its ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, where a court's denial is based on a procedural ruling, the petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and debatable "whether the district court was correct in its ruling." *Id.* Benton has not demonstrated that reasonable jurists would find the Court's findings on his claims debatable or wrong.

### V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The United States Magistrate Judge's Recommended Disposition [Record No. 15] is **ADOPTED IN FULL** and **INCORPORATED** here, by reference.

2. Benton's motion to vacate under 28 U.S.C. § 2254 [Record No. 1] is **DENIED** and this action is **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

3. Benton's request for appointment of counsel is **DENIED**.

4. A Certificate of Appealability is **DENIED**.

Dated: February 25, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge